## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

Jason Alan Bebeau,

        Debtor.

Chapter 7

Bankruptcy No. 20-41136

---

Mary R. Jensen, United States Trustee,
        Plaintiff,

v.

Jason Alan Bebeau,
        Defendant.

Adv. No. 21-04044

---

## PLAINTIFF'S TRIAL BRIEF

Pursuant to the Court's Third Amended Scheduling Order and Order for Trial and for Use of Electronic Evidence, the plaintiff submits this trial brief in support of her Complaint.

## FACTS

### *Mr. Bebeau transfers and conceals his interest in the Legacy Pines Development*

The defendant, Jason Alan Bebeau, organized Odyssey Homes, Inc. ("Odyssey") on or about August 2, 2017.   Mr. Bebeau was the registered agent, President, and Chief Executive Officer of Odyssey.

Odyssey owned multiple parcels of real estate located in Isanti, Minnesota,

known as Legacy Pines.   Legacy Pines is a residential real estate development project.

Mr. Bebeau directed the Legacy Pines project from its inception.   On or about September 18, 2018, the City of Isanti's City Council approved Odyssey's preliminary plat application for Legacy Pines.   Mr. Bebeau appeared on behalf of Odyssey at the City of Isanti's City Council meeting approving the plat application.   Odyssey later entered into a development agreement with the City of Isanti for the Legacy Pines project on November 7, 2018.

For the remainder of 2018 and 2019, and into 2020, Mr. Bebeau acted as the developer for the Legacy Pines project.

Mr. Bebeau also worked with Robert Machacek on the Legacy Pines project. Mr. Machacek owned an interest in or worked for an entity called Alliant Finance, LLC, and Alliant Finance owned various additional corporate entities.   Mr. Machacek, Alliant Finance, or one of Alliant's subsidiaries provided financing for various development projects run by Mr. Bebeau.

In January of 2019, Mr. Bebeau met and began dating Mary Garaghty.   On or about February 4, 2019, Mr. Bebeau organized Everpine Land Holdings, LLC ("Everpine Land") and Everpine Custom Homes, Inc. ("Everpine Homes") in the State of Minnesota.   Mr. Bebeau claims that Ms. Garaghty owned a 10% interest in Everpine Land, but she was unaware that she owned any interest in Everpine Land. Mr. Bebeau was also the sole shareholder, President/CEO, and Secretary of Everpine

Homes.

On or about February 14, 2019, Odyssey transferred the real estate to be used for the Legacy Pines development project to Everpine Land for no consideration. Ms. Garaghty was unaware of the transfer.

On or about April 1, 2019, unbeknownst to Ms. Garaghty, the State of Minnesota revoked Mr. Bebeau's "qualifying person" status for purposes of securing a business license. Mr. Bebeau continued to work as the developer on the Legacy Pines project.

On or about May 22, 2019, Mr. Bebeau opened a bank account for Everpine Land at Wells Fargo Bank, N.A. In the application, Mr. Bebeau represented that he was the sole owner of Everpine Land.

In September of 2019, Mr. Bebeau became engaged to Ms. Garaghty.

On November 5, 2019, Odyssey entered into a second development agreement with the City of Isanti for the Legacy Pines project. But the State of Minnesota revoked Odyssey's building contractor's license on December 17, 2019 and barred Mr. Bebeau or Odyssey from acting or holding themselves out as residential building contractors, remodelers, or roofers. Around the same time, Mr. Bebeau discussed filing for bankruptcy relief with Ms. Garaghty.

In February of 2020, Mr. Bebeau met with Ms. Garaghty and Mr. Machacek. At the February 2020 meeting, Mr. Bebeau and Mr. Machacek discussed transferring

the Legacy Pines project to Mr. Machacek to conceal it from the bankruptcy court. They agreed that they would first transfer the project to Ms. Garaghty to obscure the substance of the transaction. Mr. Bebeau and Mr. Machacek also discussed backdating documents for the purpose of such concealment. Mr. Machacek agreed to advance Mr. Bebeau $100,000 for his work on the Legacy Pines development notwithstanding the transfer of ownership. Mr. Bebeau and Mr. Machacek anticipated that Mr. Bebeau would ultimately reap profits of $890,000 on the Legacy Pines project.

On or about February 7, 2020, Odyssey purported to transfer its interest in the Legacy Pines development agreement to Everpine Land. At approximately the same time, Mr. Bebeau persuaded Ms. Garaghty to sign a document that purported to transfer his interest in Everpine Land to Ms. Garaghty. Mr. Bebeau also backdated the document to make it appear that it had been signed on August 1, 2019. Mr. Bebeau received no consideration for the transfer of his interest in Everpine Land to Ms. Garaghty.

At approximately the same time, Mr. Bebeau also persuaded Ms. Garaghty to sign a separate document purporting to transfer her interest in Everpine Land to an entity called Alliant Ventures VI, LLC. This document was backdated to January 1, 2020 and asserted that Everpine Land was indebted to Alliant Ventures VI. The transfer purported to resolve all claims between Everpine Land and Alliant Ventures

VI.   Mr. Machacek signed the document as Chief Operating Officer of Alliant Ventures VI.

On March 4, 2020, Mr. Bebeau closed Odyssey and Everpine Land's bank account, and on March 20, 2020, he dissolved Odyssey.   Also on March 4, 2020, the City of Isanti approved Resolution 2020-049, which extended the recording of the final plat for the Second Development Agreement with Odyssey.   Mr. Bebeau requested the extension.

Notwithstanding the purported transfer of his interest pertaining to the Legacy Pines development, Mr. Bebeau continued to work as the developer for the Legacy Pines project.

### Mr. Bebeau conceals his interest in the Hampton Homes development in Ramsey, Minnesota

On or about June 22, 2019, Mr. Bebeau entered into a purchase agreement with Patrick Hampton for the purchase of vacant land located at 14600 Nowthen Blvd. NW, Ramsey, MN ("14600 Nowthen Property") for $220,000.   Mr. Bebeau intended to build townhomes on the 14600 Nowthen Property.   Alliant Finance paid $5,000 in earnest money in connection with the agreement and noted that Everpine Custom Homes was the buyer on the check.   Mr. Machacek signed the check.

In July of 2019, Mr. Bebeau began contacting the City of Ramsey to begin the development process.   Despite the fact that Mr. Bebeau listed Everpine Land as the

purchaser of the 14600 Nowthen Property, he alternately indicated to the City of Ramsey that Odyssey or Everpine Homes was the developer for the project.

On September 3, 2019, Mr. Bebeau submitted a Land Use Application to the City of Ramsey for property located at 14544 Nowthen Blvd. NW, Ramsey MN ("14544 Nowthen Property"). The 14544 Nowthen Property was located immediately south of the 14600 Nowthen Property. In the Land Use Application, Mr. Bebeau listed the name of the business as "Everpine Custom Homes, Inc." and represented that he was the President of Everpine Homes.

Meanwhile, on November 25, 2019, Ms. Garaghty organized Platinum Land, LLC. Ms. Garaghty was the sole member and manager of Platinum Land. She intended to obtain a contractor's license and use Platinum Land to build homes as part of the Legacy Pines project with the assistance of Mr. Bebeau.

On March 5, 2020, Mr. Bebeau submitted a Land Use Application to the City of Ramsey for the 14600 Nowthen Property. In the Land Use Application, Mr. Bebeau listed the name of the business as "Platinum Land, LLC". Ms. Garaghty had no knowledge of Mr. Bebeau's Land Use Application or his use of Platinum Land for his development activities.

On or about March 17, 2020, Mr. Bebeau signed an addendum to the purchase agreement for the 14600 Nowthen Property. The addendum provided that he would pay an additional $20,000 in earnest money to the seller. On the same date, Alliant

Finance paid the seller $20,000.   Mr. Machacek signed the check.

On or about June 28, 2020, Mr. Bebeau signed a second addendum to the purchase agreement for the 14600 Nowthen Property.   In the second addendum, Mr. Bebeau agreed to increase the earnest money to $35,000 and the purchase price to $225,000.   The second addendum also purports to amend the name of the buyer to "Platinum Land LLC" despite the fact that Mr. Bebeau purportedly had no ownership or management interest in Platinum Land as of that date.

Mr. Bebeau continued to attempt to develop the 14600 Property and the 14544 Nowthen Property until early 2021.   He did not notify the City of Ramsey that he had terminated his efforts until January 22, 2021.

### *Mr. Bebeau continues to use Platinum Homes to engage in real estate development activities without Ms. Garaghty's knowledge*

On or about January 8, 2020, Mr. Bebeau executed a purchase agreement for property located at Nowthen Boulevard and 175th Ave NW ("Hunt Property") for $970,000.   The sellers, Ronald and Judith Hunt, accepted the offer and signed the purchase agreement on January 23, 2020.   Mr. Bebeau signed the purchase agreement on behalf of Platinum Land.   Ms. Garaghty had no knowledge of the purchase agreement.

On or about March 3, 2020, Mr. Bebeau signed an amendment to the purchase agreement that increased the purchase price to $1,185,000.   The Hunts signed the

amendment on March 4, 2020.   Mr. Bebeau continued to work on developing the Hunt Property until at least September of 2021.

The State of Minnesota ultimately declined to issue a contractor's license to Ms. Garaghty due to her association with Mr. Bebeau, so she decided to purchase a home located in Isanti, MN and "flip" it instead.   On April 15, 2020, Platinum Land entered into a purchase agreement for real estate located at 2621 Long Lake Road NW, Isanti, MN 55040 ("Long Lake Property").   On or about May 13, 2021, Platinum Land closed on the Long Lake Property.

The purchase price was $163,500.   Mr. Bebeau facilitated a loan from one of Mr. Machacek's companies, Alliant Finance, LLC, to finance the purchase of the Long Lake Property.   Platinum Land did not make a down payment to purchase the Long Lake Property, and the mortgage was not executed until June 24, 2020.

On July 28, 2020, Ms. Garaghty transferred her interest in Platinum Land to Mr. Bebeau for no consideration.   The assignment recites that Platinum Land was indebted to Mr. Bebeau "pursuant to a loan secured by a mortgage recorded against the company's real property", but no such loan between Platinum Land and Mr. Bebeau existed.   In addition, Ms. Garaghty understood that she and Mr. Bebeau would split any profits from the ultimate sale of the Long Lake Property, notwithstanding the transfer of her interest in Platinum Land to Mr. Bebeau.

On October 7, 2020, Platinum Land granted a second mortgage to Alliant

Finance, purportedly to secure another $75,000.  Just twelve days later, Mr. Bebeau and Mr. Machacek, acting on behalf of Platinum Land and Alliant Finance, entered into a voluntary foreclosure agreement as to the first mortgage.  Alliant Finance then moved to foreclose on the second mortgage on November 3, 2020.  Alliant Finance ultimately sold the Long Lake Property for $393,000 on April 6, 2021.

### Mr. Bebeau uses corporate bank accounts to pay his personal expenses

Throughout 2019 and 2020, Mr. Bebeau continuously used the bank accounts of Odyssey, Everpine Homes, and Everpine Land to pay his personal expenses.  Mr. Bebeau kept no corporate records to properly record or account for his use of the corporate accounts for his personal expenses.

### Mr. Bebeau files a fraudulent bankruptcy case and continues real estate activities

On April 22, 2020, Mr. Bebeau withdrew $1,400 in cash from the Everpine Homes bank account.  The next day, Mr. Bebeau filed a voluntary chapter 7 bankruptcy petition, schedules, and statement of financial affairs.  Randall L. Seaver was appointed as chapter 7 trustee.

The same day as Mr. Bebeau's bankruptcy filing, Mr. Machacek signed a check from Alliant Finance, LLC payable to Everpine Homes in the amount of $1,495.41. Mr. Bebeau deposited the check into the Everpine Homes corporate account.  Over approximately the next year, Mr. Machacek wrote dozens of checks on behalf of

Alliant Finance, totaling over $250,000, all of which were deposited into the Everpine Homes corporate account.

Yet Mr. Bebeau did not disclose his interest in Everpine Homes on his bankruptcy schedules or the statement of financial affairs. He also failed to disclose any interest in Platinum Land, and he failed to disclose his purported transfer of his interest in Everpine Land to Ms. Garaghty. In addition, he did not disclose his continued work in the real estate field. Instead, Mr. Bebeau represented on his bankruptcy schedules that he was unemployed, had no income, and did not expect his income to increase in the following year. He also falsely stated that he had no income at all in 2020 on his original statement of financial affairs. Mr. Bebeau's schedules and statement of financial affairs contain numerous additional false statements regarding his assets.

Mr. Seaver filed a Report of No Distribution on May 20, 2020. Mr. Bebeau subsequently filed amended bankruptcy schedules on June 23, 2020, but he never amended his statement of financial affairs. Mr. Bebeau's amended schedules contain more false statements: Mr. Bebeau claimed that he had no interest at all in any corporate entity.

Mr. Bebeau received his discharge on July 21, 2020. During and after his bankruptcy proceedings, Mr. Bebeau continued to engage in development activities on behalf of Everpine Land, Everpine Homes, and Platinum Land.

The Acting United States Trustee was unaware of Mr. Bebeau's fraudulent activities prior to Mr. Bebeau's receipt of his discharge.   In fact, Mr. Bebeau managed to conceal his activities until Ms. Garaghty contacted Mr. Seaver in 2021.   Mr. Seaver ultimately commenced an adversary proceeding against Mr. Bebeau, Mr. Machacek, Everpine Land, Everpine Homes, Odyssey, Alliant Finance, and Alliant Ventures VI. That matter was resolved when Mr. Machacek, Everpine Land, Alliant Ventures VI, and Alliant Finance agreed to pay $100,000 to Mr. Bebeau's bankruptcy estate. Separately, Mr. Bebeau agreed to pay $3,796.90 to his bankruptcy estate.

## ARGUMENT

### I.   Mr. Bebeau Obtained His Discharge Through Fraud.

The evidence will show that Mr. Bebeau obtained his discharge through fraud. He made numerous false oaths on his bankruptcy schedules, statement of financial affairs, and amended schedules.   These false oaths served to conceal the true nature of Mr. Bebeau's assets, liabilities, and income from the chapter 7 trustee.

The Bankruptcy Code provides: "On request of . . . the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge."   11 U.S.C. § 727(d)(1).

The party requesting a revocation of discharge bears the burden of proving each

applicable element of § 727(d) by a preponderance of the evidence. *See, e.g., O'Neal v. DePriest (In re DePriest)*, 414 B.R. 518, 521 (Bankr. W.D. Mo. 2009). The first element, discharge obtained through fraud of the debtor, can be met if the debtor "committed a fraud which would have barred his discharge had the fraud been known at the time of the discharge." *Id.* If the plaintiff can prove the elements that would support denial of discharge under § 727(a)(2)-(5), the proof is sufficient to demonstrate that the discharge was obtained by fraud. *See, e.g., Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 292 (Bankr. D. Kan. 2012). The plaintiff must also prove that he did not have knowledge of the fraud until after the discharge was granted. *E.g, Fokkena v. Peterson (In re Peterson)*, 356 B.R. 468, 476 (Bankr. N.D. Iowa 2006).

The Bankruptcy Code further provides that the Court may deny the discharge of a debtor if: "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath." 11 U.S.C. § 727(a)(4)(A). To prevail on a § 727(a)(4)(A) claim, the plaintiff must prove "(1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012).

"The bankruptcy schedules and forms require the debtor to verify the information therein under penalty of perjury, and the verification 'has the force and

effect of an oath.'" *Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 138 (Bankr. D. Minn. 2009); *see also Charles*, 474 B.R. at 684 ("It is well established that, because statements made by a debtor in his schedules and statements, and at his meeting of creditors, are signed under pains and penalties of perjury, they constitute 'oaths' for the purposes of § 727(a)(4)(A)."). "Statements made with reckless indifference to the truth are regarded as intentionally false," and "fraudulent intent may be established by circumstantial evidence." *Charles*, 474 B.R. at 684.

In order to support denial of discharge, "the false statement must be 'material.'" *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992). Stated differently, "'[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Id.* (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)). Thus, "the threshold to materiality is fairly low." *Charles*, 474 B.R. at 686.

The Bankruptcy Code imposes a duty on debtors that "requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Id.* at 687. And, "it is crucial to the effectiveness of the bankruptcy system that the Debtor proceed with complete candor." *Id.* Finally, "the [t]rustee should not be required to conduct his own investigation to discover the facts." *Id.*

The Bankruptcy Appellate Panel for the Eighth Circuit has observed that:

13

"As § 727(a)(4)(A) makes clear, the [Bankruptcy] Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind. *The debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.*"  *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 453-54 (B.A.P. 8th Cir. 2015) (emphasis supplied).  In addition, the panel wrote that: "Full disclosure is required, not only to ensure that creditors receive everything they are entitled to receive under the Bankruptcy Code, but also to give the bankruptcy system credibility and make it function properly and smoothly."  *Id.*

Under 11 U.S.C. § 727(a)(2)(B), "the court shall grant the debtor a discharge unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition."  Thus, the plaintiff must prove the following five elements to prevail: (1) the debtor; (2) transferred or concealed; (3) property of the estate; (4) with the intent to hinder, delay, or defraud the creditor; (5) after the filing of the bankruptcy petition. *See, e.g., Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477 (2d Cir. 2011).  The Bankruptcy Code further provides that a debtor has an affirmative obligation to "surrender to the trustee all property of the estate."  11 U.S.C. § 521(a)(4).  As one court noted, "[b]ankruptcy is not a game of hide and seek that Debtor plays with the Trustee and the Court.  Full disclosure is the quid pro quo for a debtor's discharge."

14

*McDow v. Ward (In re Ward)*, 2012 WL 3201871, at *8 (Bankr. D.S.C. Aug. 2, 2012) (denying debtor's discharge where debtor failed to disclose post-petition rents until questioned by United States Trustee)).

The Bankruptcy Code also provides: "(a) The court shall grant the debtor a discharge, unless— . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). To prevail on a § 727(a)(2)(A) claim, the plaintiff "must prove that the debtor's actions took place within twelve months prior to filing; that the debtor took the actions with the intent to hinder, delay or defraud creditors; and that the actions complained of in fact consisted of transferring or concealing property." *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010).

A presumption of fraud arises when a debtor has transferred valuable property without payment. *Grimlie*, 439 B.R. at 716; *see also McDermott v. Crabtree (In re Crabtree)*, 554 B.R. 174, 193 (Bankr. D. Minn. 2016). And once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors. *Grimlie*, 439 B.R. at 716; *see also Crabtree*, 554 B.R. at 193.

Sections 522(o), 548(a)(1), and 727(a)(2), as well as Minn. Stat. § 513.44, all

contain identical, disjunctive language regarding the requisite intent for each statutory provision. *See Addison v. Seaver (In re Addison)*, 540 F.3d 805, 812 (8th Cir. 2008). Although the Eighth Circuit has been "reluctant to deny a homestead exemption without a finding of intent to defraud", it has never held that fraudulent intent is *required* to prevail under Section 727(a)(2). *See id.* (explaining that in prior case reversing bankruptcy court's denial of homestead exemption, the court did not "mean to say that the test of 'hinder or delay' might not prevail under another set of facts," but ruled that the facts of that case 'd[id] not support such a finding.'" (quoting *Jensen v. Dietz (In re Sholdan)*, 108 F.3d 886, 887 (8th Cir. 1997))). Thus, fraudulent intent is not a necessary element of a Section 727(a)(2) claim. *See United States v. Tomlin (In re Tomlin)*, 1987 WL 1416797, at *2 (Bankr. S.D. Iowa Sept. 25, 1987) ("Since section 727(a)(2) is phrased in the disjunctive, it is not necessary for the plaintiff to prove fraud—proof of 'an intent to hinder or delay suffices.'"); *see also Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 591 (Bankr. D. Minn. 1987) ("Fraudulent intent is not necessary to sustain an objection to discharge under § 727(a)(2)(A). . . . A finding that the debtor had actual intent to hinder or delay creditors is sufficient." (citations omitted)).

To the extent that a litigant seeks to prove fraudulent intent under Section 727(a)(2), the Eighth Circuit appears to have ratified the "badges of fraud" approach to inferring fraudulent intent. *Addison*, 540 F.3d at 813-14. The badges of fraud are: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or

control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* at 813-14; Minn. Stat. § 513.44(b).

### A. Mr. Bebeau knowingly and fraudulently made multiple material false oaths in his bankruptcy case

The evidence will show that Mr. Bebeau made numerous false oaths when he filed his bankruptcy case.

Mr. Bebeau made the following false oaths or omissions related to his real estate development activities:

- On schedule B, Mr. Bebeau falsely stated that Everpine Land's assets consisted solely of a checking account. The evidence will show that Everpine Land owned all of the real estate associated with the Legacy Pines development and

may have been party to an agreement to purchase the 14600 Nowthen Property. And the evidence will show that Mr. Bebeau knew this statement was false: Mr. Bebeau continuously worked on both the Legacy Pines development and the 14600 Nowthen Property development before and after his bankruptcy petition was filed.

- On schedule B and schedule F, Mr. Bebeau falsely stated that he, Everpine Land, and Odyssey owed an entity called "Alliant Finance Mortgage" $4 million or more. There is no entity called Alliant Finance Mortgage, and no Alliant entity associated with Mr. Machacek ever loaned Mr. Bebeau or any of his companies $4 million.

- On schedule B, Mr. Bebeau failed to disclose any interest in Everpine Homes. The evidence will show that Mr. Bebeau continuously used a bank account owned by Everpine Homes both before and after his bankruptcy filing, including on the date that he filed his bankruptcy petition, and that he used Everpine Homes for multiple development projects both before and after his bankruptcy filing.

- On schedule B, Mr. Bebeau failed to disclose any interest in Platinum Land. The evidence will show that Mr. Bebeau used Platinum Land for multiple development projects both before and after his bankruptcy filing, regardless of whether he had a legal interest in Platinum Land.

- On schedule I, Mr. Bebeau failed to disclose *any* income and falsely represented that he was unemployed.

- On the statement of financial affairs, Mr. Bebeau made no mention of the purported transfer of his interest in Everpine Land to Ms. Garaghty.

The evidence will also show that Mr. Bebeau made numerous additional false oaths regarding his personal property.   Mr. Bebeau repeated many of these false oaths on his amended bankruptcy schedules, and he amplified the false oaths regarding his real estate development activities.   Specifically, Mr. Bebeau failed to disclose an interest in any corporate entities at all.

Mr. Bebeau knew that these numerous statements were false because he continued to actively engage in development activities using three of the corporate entities.   In addition, he received the funds that Mr. Machacek promised him in connection with the transfer of the Legacy Pines project.   The evidence will show that Mr. Bebeau and Mr. Machacek engaged in a scheme to conceal Mr. Bebeau's involvement in the Legacy Pines project and his other development activities.

There can be no doubt that Mr. Bebeau's fraud was material.   Mr. Seaver ultimately recovered substantial funds from Mr. Bebeau and Mr. Machacek's entities in connection with Mr. Bebeau's fraud.   But for the discovery of the fraud, Mr. Seaver would have administered no funds for the benefit of unsecured creditors in Mr. Bebeau's bankruptcy case.   Instead, the evidence will show that Mr. Seaver collected

over $100,000 to distribute to creditors as a result of the discovery of Mr. Bebeau's fraud.

The evidence will also show that the plaintiff knew nothing about Mr. Bebeau's fraud until well after Mr. Bebeau obtained his discharge. In fact, Mr. Bebeau successfully concealed his fraud until Ms. Garaghty informed Mr. Seaver about Mr. Bebeau's scheme to conceal his assets.

The evidence will demonstrate that Mr. Bebeau's discharge would have been denied under Section 727(a)(4)(A) if the fraud had been known at the time of Mr. Bebeau's discharge. As a result, the Court should revoke Mr. Bebeau's discharge.

**B.     Mr. Bebeau concealed property of the estate with the intent to hinder, delay, or defraud Mr. Seaver after he filed his bankruptcy petition**

The evidence will show that Mr. Bebeau concealed his interest in Everpine Homes and Platinum Land and the true value of his interest in Everpine Land, among other property of the estate, from Mr. Seaver.

Mr. Bebeau engaged in multiple development projects both before and after his bankruptcy petition under the auspices of three different corporate entities. He actively used the bank account of Everpine Homes to conduct his own personal financial affairs both before and after his filed his bankruptcy petition. He concealed all of this activity when he filed false bankruptcy schedules and a statement of financial affairs and failed to disclose it at his meeting of creditors. He compounded the

concealment when he filed false amended bankruptcy schedules. Mr. Bebeau's interests in these various development projects and entities was property of the bankruptcy estate. Ultimately, Mr. Bebeau's concealment of the assets was not successful, but it took approximately one year before the fraud was uncovered. During that entire time, Mr. Bebeau concealed property of the estate from the chapter 7 trustee. Moreover, the evidence will show that Mr. Bebeau intended to conceal the property of the estate for the purpose of hinder, delaying, or defrauding the bankruptcy trustee.

Mr. Bebeau's discharge would have been denied under Section 727(a)(2)(B) if the fraud had been known prior to Mr. Bebeau's bankruptcy discharge. As discussed above, the plaintiff knew nothing about Mr. Bebeau's concealment until well after Mr. Bebeau obtained his discharge. As a result, the Court should revoke Mr. Bebeau's discharge under Section 727(d)(1).

## C. Mr. Bebeau concealed his property with the intent to hinder, delay, or defraud his creditors within one year before he filed his bankruptcy petition

The evidence will show that Mr. Bebeau transferred and concealed his interest in Everpine Land with the intent to hinder, delay, or defraud his creditors within one year before he filed his bankruptcy petition.

There is no dispute that Mr. Bebeau purported to transfer his interest (regardless of whether this was a 90% or 100% interest) in Everpine Land to Ms. Garaghty no

earlier than August 1, 2019.   He filed his bankruptcy petition on April 23, 2020.   Thus, the transfer of Mr. Bebeau's property occurred within one year prior to the filing of his bankruptcy petition.

And the transfer to Ms. Garaghty, to the extent it occurred at all, was gratuitous. Ms. Garaghty provided no consideration for the transfer.   As a result, a presumption of fraud applies.   In addition, the evidence will show that Mr. Bebeau initiated the purported transfer for the express purpose of concealment.

Mr. Bebeau cannot rebut the presumption of fraud.   And even if he could, the badges of fraud analysis shows that Mr. Bebeau acted with fraudulent intent.   Mr. Bebeau transferred his interest in Everpine Land to an insider:   his girlfriend and occasional business partner, Ms. Garaghty.   He retained control of Everpine Land, even after Ms. Garaghty supposedly transferred her interest in it to Alliant.   In fact, Ms. Garaghty had no idea she ever owned an interest in Everpine Land.   The transfer was never disclosed in Mr. Bebeau's bankruptcy case.   Mr. Bebeau made the transfer at a time when he was facing collection activity from various creditors, and the evidence will show that he was insolvent at the time of the transfer.

Finally, the plaintiff need not prove fraudulent intent.   Given the anticipated evidence, there should be no question that Mr. Bebeau intended to hinder or delay creditors when he transferred his interest in Everpine Land.

Mr. Bebeau's discharge would have been denied under Section 727(a)(2)(A) if the

facts had been known prior to Mr. Bebeau's bankruptcy discharge. As a result, the Court should revoke Mr. Bebeau's discharge under Section 727(d)(1).

To the extent that the plaintiff did not make specific allegations under Section 727(a)(2)(A) in his complaint, the plaintiff maintains that a cause of action premised on Section 727(d)(1) does not require that the plaintiff specifically plead the underlying bases for an objection to discharge under Section 727(a). In any event, the plaintiff intends to move to amend the complaint to conform to the evidence adduced at trial in order to pursue argument based on Section 727(a)(2)(A). *See* Fed. R. Bankr. P. 7015 (incorporating Fed. R. Civ. P. 15).

## II. Mr. Bebeau knowingly and fraudulently acquired property of the estate and failed to deliver the property to Mr. Seaver after the date of the filing of the bankruptcy petition

Mr. Bebeau acquired multiple interests in property of the bankruptcy estate after the date of his bankruptcy petition and failed to deliver the property to Mr. Seaver. The Bankruptcy Code provides: "On request of . . . the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if— . . . (2) the debtor acquired property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2). The party requesting a revocation of discharge "must prove each element by a preponderance of the evidence." *See, e.g., Doeling v. Coating Specialties, LLC (In re Toftness)*, 439 B.R. 499,

501 (B.A.P. 8th Cir. 2010). The first step is "to determine if the debtor acquired property of the estate." *Id.* at 503. The second element is "whether the debtor knowingly and fraudulently failed to deliver property of the estate to the trustee." *Id.* With respect to the second element: "Fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct. . . . A debtor's intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent. . . . The focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor. . . . Fraudulent intent may also be established by showing that the debtor acted so recklessly that fraud can be implied. . . . Fraud is rarely established by admission. Instead, the trial court must look at the circumstantial evidence and the events that occurred to try to determine intent. . . . *Fokkena v. Klages (In re Klages)*, 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008).

The evidence will show that Mr. Bebeau acquired the following property of the estate after the date of his bankruptcy petition: (1) funds from Alliant associated with the development of Legacy Pines; (2) the Long Lake Property; and (3) the Nowthen Property.

As discussed above, Mr. Bebeau acquired funds promised to him by Mr. Machacek in connection with the scheme to conceal Mr. Bebeau's true interest in the

Legacy Pines development.   These funds were acquired post-petition, and Mr. Bebeau failed to deliver them to Mr. Seaver.   In fact, Mr. Bebeau did not report his acquisition of the funds at any time.

The evidence will show that Mr. Bebeau also had an equitable interest in Platinum Land at the time that he filed his bankruptcy petition.   On May 13, 2020, a few weeks after he filed his bankruptcy petition, Platinum Land purchased the Long Lake Property.   It also entered into an addendum to the purchase agreement for the 14600 Nowthen Property after the bankruptcy petition was filed.   Neither agreement, each of which created certain property rights that belonged to the bankruptcy estate, were ever disclosed to Mr. Seaver.

The evidence will show that Mr. Bebeau knowingly acquired these assets with fraudulent intent.   Mr. Bebeau failed to ever report the acquisitions to Mr. Seaver or otherwise disclose them.

As a result, the Court should revoke Mr. Bebeau's discharge under Section 727(d)(2).

*—Remainder of page intentionally blank—*

**CONCLUSION**

For all of the reasons set forth above, the Court should revoke Mr. Bebeau's

discharge.


Dated: May 31, 2022                    MARY R. JENSEN
                                         ACTING UNITED STATES TRUSTEE
                                         REGION 12

BY:    /e/ Colin Kreuziger
          Colin Kreuziger, MN Atty. No. 0386834
          Trial Attorney
          United States Department of Justice
          1015 U.S. Courthouse
          300 South Fourth Street
          Minneapolis, MN 55415
          (612) 334-1350
          Colin.Kreuziger@usdoj.gov